NIHAT DENIZ BAYRAMOGLU, ESQ
Nevada Bar No. 14030
deniz@bayramoglu-legal.com
SHAWN A. MANGANO, ESQ.
Nevada Bar No. 6730
shawnmangano@bayramoglu-legal.com
**BAYRAMOGLU OFFICES LLC**
1540 West Warm Springs Road Suite 100
Henderson Nevada 89014
Telephone:  702.462.5973
Facsimile:   702.553.3404

*Attorneys for Plaintiff Nazly Aileen Bayramoglu*

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA**

| | |
|---|---|
| **NAZLY AILEEN BAYRAMOGLU,**<br><br>          Plaintiff,<br><br>v.<br><br>**AMAZON.COM, INC.,**<br><br>          Defendant. | Case Number: 2:23-cv-00855<br><br>**COMPLAINT AND<br>DEMAND FOR JURY TRIAL** |

Plaintiff NAZLY AILEEN BAYRAMOGLU ("Plaintiff") complains as follows against Defendant Amazon.com, Inc. ("Amazon") on information and belief:

**NATURE OF THE ACTION**

1.       This is an action for defamation in violation of the common law of the State of Nevada.

**PARTIES**

2.       Plaintiff is a citizen of the State of Nevada with her residence located in the City of Henderson, Clark County.

3.       Amazon is a corporation organized under the laws of the State of Delaware with its principal place of business located in Seattle, Washington.

1

**JURISDICTION**

4. This Court has subject matter jurisdiction over this dispute pursuant to Plaintiff is deemed to be a citizen of the State of Nevada under 28 U.S.C. § 1332(a)(1).

5. Plaintiff is a United States citizen domiciled in the State of Nevada.

6. Amazon is a Delaware corporation with its principal place of business in the State of Washington.

7. Plaintiff is deemed to be a citizen of the State of Nevada under 28 U.S.C. § 1332(a)(1).

8. Amazon is deemed to be a citizen of the State of Delaware and the State of Washington under 28 U.S.C. § 1332(c)(1).

9. The amount in controversy in this action exceeds the sum of $75,000, exclusive of interest and costs.

**VENUE**

10. The United States District Court for the District of Nevada is an appropriate venue pursuant to 28 U.S.C. § 1391(b)(1) because Amazon is deemed to reside in the State of Nevada where this judicial district is located.

11. Amazon is deemed to reside in this judicial district under 28 U.S.C. § 1391(c) because the company is subject to personal jurisdiction in the State of Nevada based on its substantial, continuous and systematic activities that include, but are not limited to, maintaining a fulfillment center located at 3837 Bay Lake Trl., #111, North Las Vegas, Nevada 89030 and a fulfillment center located at 4550 Nexus Way, North Las Vegas, Nevada 89081.

**FACTUAL ALLEGATIONS**

**A. PLAINTIFF'S PROFESSIONAL REPUTATION**

12. Plaintiff is an attorney licensed to practice law by the New Mexico Supreme Court and is a member of the State Bar of New Mexico. Plaintiff also routinely practices before the United States Patent and Trademark Office (the "USPTO").

13. Plaintiff serves as an attorney at Bayramoglu Law Offices, LLC ("BLO") and manages the firm's trademark prosecution team.

14. The trademark prosecution team is responsible for preparing, filing, and obtaining trademark applications and registrations for applicants before the USPTO.

15. Plaintiff has practiced law since 2018 and has prosecuted thousands of trademark applications before the USPTO.

16. Plaintiff has established herself as preeminent trademark attorney with a national and international practice having represented numerous clients in the United States from such countries as China, Turkey and the United States.

17. Plaintiff routinely travels internationally to represent and promote BLO's trademark practice at trade shows, conventions and client meetings. Most recently, Plaintiff represented BLO at the International Trademark Association's 2023 Annual Meeting in the Republic of Singapore.

18. Plaintiff has established an impeccable professional reputation. She has never been disciplined by the USPTO's Office of Enrollment and Discipline ("OED") despite having prosecuted thousands of trademark applications. She has also never had a disciplinary action commenced against her by the Disciplinary Board of the Supreme Court of New Mexico.

19. Plaintiff, in association with BLO, is well known to Examining Attorneys at the USPTO based on appearing as Attorney of Record on thousands of trademark applications.

20. The United States trademark community is a very small community where attorney members of the community constantly encounter one another both in adversarial proceedings and in conferences and meetings.

21. The international trademark community is also an extremely small community. International attorney and firm groups discuss all matters in different forum group chats and are constantly in contact. Examples of the communication shared within those groups are new rule proposals or when the USPTO issues sanctions on a filer or representatives. Such news spreads through these groups immediately.

22. The international trademark industry is full of fraudulent agencies that claim to have legitimate United States licensed attorneys on staff to perform filings with the USPTO, but, in fact, do not have such attorneys on staff. As a result, many foreign applicants seek to engage United States law firms and counsel they can trust and that have not been sanctioned by OED. As such, maintaining a sterling reputation is essential to developing and maintaining a successful international trademark practice.

23. Plaintiff has worked tirelessly to help establish herself and BLO as a legitimate United States firm and attorney that international clients can rely on for their USPTO filing needs. As a result, clients frequently seek out Plaintiff's expertise when their current Attorney of Record encounters problems with the USPTO during the trademark application process.

**B. THE AMAZON BRAND REGISTRY**

24. The Amazon Brand Registry ("ABR") is an online service that allows accepted applicants to register their intellectual property with Amazon so that the company can employ its unique technology to prevent, detect and remove infringing and counterfeit goods and content. As such, getting registered by ABR is highly sought after by many trademark owners.

25. Admission into ABR is through an application process whereby Amazon investigates the applicant and verifies ownership and registration of certain intellectual property rights, such a trademark, with the USPTO.

26. As part of the ABR application process, a digital code is sent to the Attorney of Record associated with the applicant's trademark registration at the USPTO. The Attorney of Record is then obligated to give the digital code to the proper owner of the mark. The mark owner then inputs the digital code to finalize the verification process and obtain ABR registration.

27. Many of BLO's clients seek registration with ABR. Plaintiff serves as Attorney of Record with the USPTO for the marks that seek and have sought registration with ABR through BLO.

### C.  AMAZON'S DEFAMATORY CONDUCT

28. On or around April 3, 2023, Plaintiff received verbal notice from BLO staff that two separate clients had their ABR applications rejected after sending them their respective verification codes.

29. The reason the applications were rejected by ABR was stated in an e-mail from Amazon. The email stated: "we have concluded that the brand/user is currently ineligible for Brand Registry since the trademark [TM] registration was filed by an attorney who has previously been associated with a TM that was sanctioned/made invalid by the United States Patent and Trademark Office (USPTO) for violating USPTO's Terms and Conditions." The e-mail further states: "In order to move forward, you will need to file a new trademark with an attorney who has not been associated with any abusive/risky conduct in the past.".

30. The first clear inference from Amazon's application rejection e-mail is that the current Attorney of Record was associated with trademark prosecution conduct that resulted in a mark being sanctioned and/or invalidated by the USPTO.

31. The second clear inference from Amazon's application rejection e-mail is that the current Attorney of Record for the mark has engaged in abusive and/or risky conduct while practicing before the USPTO.

32. The final clear inference from Amazon's application rejection e-mail is that the client must terminate the current Attorney of Record and engage different counsel in order to obtain ABR registration.

33. As set forth earlier, Plaintiff has never had an OED complaint filed against her with the USPTO despite having prosecuted thousands of trademark applications. Moreover, Plaintiff has never had a disciplinary action commenced against her by the Disciplinary Board of the Supreme Court of New Mexico.

34. On April 3, 2023, an associate with BLO sent an email to J'Aimee Crockett, counsel for Amazon, and requested a meeting to discuss this issue of Amazon making false statements concerning Plaintiff in its ABR application rejection e-mails.

35. On April 3, 2023, Nihat Deniz Bayramoglu, Gokalp Bayramoglu, Nandish Wijetilleke, J'Aimee Crockett and Plaintiff met via telephonic conference to discuss the issues regarding BLO's clients' ABR application rejections and to request that J'Aimee Crockett connect BLO with appropriate counsel at Amazon.

36. On April 12, 2023, Nihat Deniz Bayramoglu, Gokalp Bayramoglu, Nandish Wijetilleke, J'Aimee Crockett, Benjamin Okeke, Jayme Staten and Plaintiff met via Amazon Chime, which is the company's video conferencing platform. Benjamin Okeke serves as Corporate Counsel, Intellectual Property at Amazon. Jayme Staten serves as Corporate Counsel at Amazon.

37. During this discussion, Benjamin Okeke indicated that Amazon had implemented an internal process during the ABR investigation whereby the company would rely on certain documentation from the USPTO that listed marks that had previously been flagged for various reasons. Mr. Okeke further stated that Amazon did no further investigation to confirm that the current Attorney of Record was counsel for the client at the time of the alleged questionable conduct. The meeting attendees discussed that under Amazon's current ABR investigation procedure, if a mark was previously filed by counsel that is being investigated by OED and a new attorney took over as Attorney of Record, the new attorney would be inappropriately flagged and associated with the actions of the past attorney.

38. Plaintiff routinely takes over as Attorney of Record for clients' trademark applications when their engaged representative experiences difficulties during the USPTO examination process.

39. During the April 12, 2023 online meeting, Benjamin Okeke assured us that Amazon had halted this internal process given its apparent flaws. Benjamin Okeke further stated Amazon would expedite the ABR applications of BLO's that were previously rejected.

40. Since the April 12, 2023 discussion, Plaintiff has sent four (4) separate follow-up emails to Benjamin Okeke and Jayme Staten at Amazon. Plaintiff did not receive any substantive responses to these emails. In fact, Plaintiff only received one acknowledgement of receipt from Jayme Staten.

41. To date, Plaintiff has not received a substantive response to any of her emails sent to Amazon concerning this matter.

42. On May 12, 2023, one of BLO's clients requested the firm prepare a Power of Attorney ("POA") for multiple trademark applications and registrations. However, upon preparation of the POA, the client saw Plaintiff's name on the filing and refused to sign it if her name was going to be on the files. The client insisted another attorney's name be listed on the POA for the files instead. This client then explained that they cannot have Plaintiff's name associated with their mark applications because her name appeared on a list of "Amazon Blacklisted Attorneys" circulating in the international intellectual property community.

43. Since Amazon's application rejection e-mails to BLO's clients, the firm has had multiple clients request that Plaintiff's name be removed from their trademark files and replaced with a different Attorney of Record. These removal requests have been made immediately after Amazon rejected their ABR applications and advised them that their Attorney of Record had been involved in a trademark application that had been sanctioned and or invalidated by the USPTO.

44. Since May 17, 2023, at least four (4) more clients have requested that Plaintiff's name be removed from and/or refused to list her as Attorney of Record on their trademark files. Plaintiff maintains that these clients have received an ABR application rejection e-mail or have learned that she is associated with mark registrations that have been flagged for risky or abusive USPTO conduct during the ABR application review process.

45. Each time Plaintiff hears that a client wants to remove her name from their application, the more anxious she gets about this entire situation. Plaintiff has also suffered professional humiliation and demoralization because BLO's clients and prospective clients believe her to be a bad actor that is responsible for the sanctioning and/or invalidation of numerous mark applications with the USPTO.

46. Plaintiff believes that the content of Amazon's ABR application rejection e-mails that have been disseminated to her clients has directly harmed her professional reputation and continues to immediately and imminently harm her professional reputation.

47. Plaintiff believes that the content of Amazon's ABR application rejection e-mails that have been disseminated to her clients has resulted in her inclusion on a list of "Amazon Blacklisted Attorneys" that has harmed her professional reputation and continues to immediately and imminently harm her professional reputation.

## CLAIM FOR RELIEF - DEFAMATION

48. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 47, above.

49. Amazon's ABR application rejection e-mail contained the statement "the trademark [TM] registration was filed by an attorney who has previously been associated with a TM that was sanctioned/made invalid by the United States Patent and Trademark Office (USPTO) for violating USPTO's Terms and Conditions."

50. Amazon's ABR rejection e-mail contained the further statement, "In order to move forward, you will need to file a new trademark with an attorney who has not been associated with any abusive/risky conduct in the past.".

51. Amazon statements in the ABR rejection e-mail were reasonably identifiable to be directed to the Plaintiff since it was transmitted to her clients and she was the Attorney of Record for the clients' USPTO trademark registrations.

52. Amazon's statements in ABR rejection e-mail were false and defamatory in, at least, the fact that Plaintiff has not engaged in trademark prosecution conduct been involved with that resulted in the mark being sanctioned and/or invalidated by the USPTO for violating its terms and conditions.

53. Amazon's statements in ABR rejection e-mail were false and defamatory in, at least, the fact that Plaintiff has not been involved with any abusive or risky conduct in the past while prosecuting trademarks before the USPTO.

54. In fact, Plaintiff has never had an OED complaint filed against her with the USPTO despite having prosecuted thousands of trademark applications. Moreover, Plaintiff has never had

a disciplinary action commenced against her by the Disciplinary Board of the Supreme Court of New Mexico.

55. Amazon's publication of the ABR rejection e-mail containing the above defamatory statements were unprivileged and disseminated to several of Plaintiff's clients.

56. Amazon's publication of the ABR rejection e-mail containing the above defamatory statements were done intentionally, recklessly or negligently in that they were directed toward the current Attorney of Record for the associated registered client trademarks without regard for, or otherwise investigating, whether the current Attorney of Record was counsel at the time of the alleged inappropriate conduct or was in any way responsible for the alleged inappropriate conduct.

57. Amazon's defamatory statements clearly imputes Plaintiff's lack of fitness for a trade, business or profession, thereby constituting defamation *per se*.

58. Plaintiff is entitled to presumed damages based on Amazon's defamation *per se*.

59. Alternatively, Plaintiff has suffered actual damages in an amount exceeding $75,000, exclusive of interest and costs, subject to proof at trial.

60. Amazon continues to disseminate the ABR rejection e-mails containing the above defamatory statements, and the ongoing direct results of doing so, have and will continue to cause irreparable harm to Plaintiff's professional reputation, standing in the trademark industry and harm the goodwill associated with her existing and potential client relationships, thereby leaving her with no adequate remedy at law.

61. Unless Amazon is temporarily, preliminarily and permanently enjoined from disseminating the ABR rejection e-mails to Plaintiff's clients and potential clients, Plaintiff will continue to be irreparably harmed, and thus she is entitled to entry of an appropriate temporary restraining order, preliminary injunction and permanent injunction.

**PRAYER FOR RELIEF**

Plaintiff requests that this Court grant her claim for relief as follows:

1. Temporarily, preliminarily and permanently enjoin and restrain Amazon from disseminating the ABR rejection e-mails to Plaintiff's clients and potential clients;

2. Entry of an award of presumed damages for Amazon's defamation *per se*;

3. Entry of an award of actual damages;

4. Entry of an award of pre- and post-judgment interest in accordance with applicable law; and

5. Grant Plaintiff such other relief as this Court deems appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff requests a trial by jury pursuant to Federal Rule of Civil Procedure 38.

DATED this 31st day of May 2023.

**BAYRAMOGLU OFFICES LLC**

*/s/ Nihat Deniz Bayramoglu*
NIHAT DENIZ BAYRAMOGLU, ESQ.
Nevada Bar No. 14030
SHAWN A. MANGANO, ESQ.
Nevada Bar No. 6730
540 West Warm Springs Road, Suite 100
Henderson, Nevada 89014
Telephone:  702.462.5973
Facsimile:   702.553.3404
Deniz@bayramoglu-legal.com
shawnmangano@bayramoglu-legal.com
*Attorneys for Plaintiff*